UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

*********************************************************************

UNITED STATES OF AMERICA          4:26-CR-00135-1

VS.                               HOUSTON, TEXAS

ALFONSO WILSON                    MARCH 31, 2026

*********************************************************************

REDACTED TRANSCRIPT OF RE-ARRAIGNMENT PROCEEDINGS
HEARD BEFORE THE HONORABLE DAVID HITTNER
UNITED STATES DISTRICT JUDGE

*********************************************************************

<u>APPEARANCES:</u>

FOR THE GOVERNMENT:          MS. LINDSEY D. CARSON
                             MR. ABDUS SAMAD PARDESI
                             U.S. Department of Justice
                             Criminal Division
                             1400 New York Avenue NW
                             Washington, DC 20005


                             MR. BRADLEY ROY GRAY
                             U.S. Attorney's Office
                             1000 Louisiana Street
                             Suite 2300
                             Houston, Texas 77002




        Proceedings recorded by mechanical stenography,
transcript produced via computer.

**REDACTED TRANSCRIPT**

FOR THE DEFENDANT:                    MR. EDUARDO JESUS FRANCO
                                      Law Office of
                                         Eduardo J. Franco, PC
                                      101 Southwestern Boulevard
                                      Suite 101
                                      Sugar Land, Texas 77489


                                      MR. THOMAS P. MOORE
                                      Law Office of Thomas P. Moore
                                      800 Dolorosa Street
                                      Suite 206
                                      San Antonio, Texas 78207


Official Court Reporter:              Lanie M. Smith, CSR, RMR, CRR
                                      Official Court Reporter
                                      United States District Court
                                      Southern District of Texas
                                      515 Rusk
                                      Room 8004
                                      Houston, Texas 77002

**REDACTED TRANSCRIPT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

******************************************************************

UNITED STATES OF AMERICA          4:25-CR-00329-2


VS.                               HOUSTON, TEXAS


TOMI-KO BOWER                     MARCH 31, 2026


******************************************************************

TRANSCRIPT OF RE-ARRAIGNMENT PROCEEDINGS
HEARD BEFORE THE HONORABLE DAVID HITTNER
UNITED STATES DISTRICT JUDGE

******************************************************************

APPEARANCES:

FOR THE GOVERNMENT:              MR. DEVON MOREL HELFMEYER
                                 U.S. Attorney's Office
                                 1000 Louisiana Street
                                 Suite 2300
                                 Houston, Texas 77002


FOR THE DEFENDANT:               MS. MONIQUE CHANTELLE SPARKS
                                 The Sparks Law Firm
                                 1923 Blodgett Street
                                 Houston, Texas 77004


Official Court Reporter:         Lanie M. Smith, CSR, RMR, CRR
                                 Official Court Reporter
                                 United States District Court
                                 Southern District of Texas
                                 515 Rusk
                                 Room 8004
                                 Houston, Texas 77002


        Proceedings recorded by mechanical stenography,
transcript produced via computer.

# REDACTED TRANSCRIPT

**P R O C E E D I N G S**

THE LAW CLERK:  All rise.

THE COURT:  Okay.  Thank you.  Please be seated.  Sorry for the few minutes' delay.  Let me sign these papers and we'll get right underway.

All right.  I'm going to handle both re-arraignments at the same time.  I've done that many times, so I'm going to call the first case.

The Court calls Criminal Matter 25-329-02, United States versus Tomi-ko Bower.

Who represents the government?

MR. HELFMEYER:  Good afternoon, Your Honor.  Devon Helfmeyer on behalf of the United States.

THE COURT:  And for the defense?

MS. SPARKS:  Good evening, Your Honor.  Monique Sparks for the defendant.

THE COURT:  Okay.  You're going to have to get close to the microphone.  Your voice doesn't carry.

MS. SPARKS:  Yes, Your Honor.

THE COURT:  Okay.  Where is your client?

MS. SPARKS:  May she approach, Your Honor?

THE COURT:  She's on bond?

MS. SPARKS:  Yes, Your Honor.

THE COURT:  All right.  Well, doesn't she have to come up here?

MS. SPARKS: That's what I asked. I said, "May she approach, Your Honor?"

THE COURT: That's what I didn't hear.

MS. SPARKS: Okay.

THE COURT: The Court also calls at this time Criminal Matter 26-135-01, United States versus Alfonso Wilson.

Who represents the government?

MS. CARSON: Lindsey Carson for the United States.

THE COURT: And for the defense?

MR. FRANCO: Your Honor, Eduardo Franco for Mr. Wilson.

THE COURT: Okay. We're going to have to do something with those.

What do you suggest, Joseph?

THE CASE MANAGER: Do you want them at the tables?

THE COURT: No. No.

Okay. We redid the wiring here when I had that case about five years ago, that Stanford Financial case. Okay. It was all wired up.

So if you're in front of the microphones, it's going to work.

THE CASE MANAGER: Do you want me to give them this?

THE COURT: Maybe so. I don't think we need the mobile mic. Just get close to a microphone.

And, for instance, if the government wants to use that one or you can use -- stand right at the corner of the

table, pull it over all the way as best you can, and your voice will carry.

All right. There are some twists and turns on each of these. And I'm hoarse again, so give me a second. I'm going to -- I think you've heard that before with me.

Okay. Also now when we called Mr. Wilson up, who is representing him? I know we have --

MR. FRANCO: Yes, Your Honor. Eduardo Franco for Mr. Wilson and Mr. Tom Moore as well.

MR. MOORE: Tom Moore, Your Honor.

THE COURT: Okay. And now for the government?

MS. CARSON: Lindsey Carson for the United States.

MR. GRAY: Also here from the United States Attorney's Office is Brad Gray.

MR. PARDESI: And also here from the Criminal Division and Fraud Section, Samad Pardesi.

Good afternoon, Your Honor.

THE COURT: Okay.

MR. HELFMEYER: And I'm just on Ms. Bower's case, Your Honor.

THE COURT: Just, huh?

MR. HELFMEYER: Yes, Your Honor.

THE COURT: As you see, I have two scripts that I've been using almost 40 years. I'm going to go on -- which I can do finally -- one is on an information. I understand that.

**REDACTED TRANSCRIPT**

One is going on an indictment; so if I'm switching back and forth, aside from that, though, we have to read -- I have to read and you have to wait for the one to be done and the other to be done, so it may seem a little out of the ordinary. Although I understand in the Valley they do this all the time if you've tried cases down there.

All right. Now, we've got the Bower case.

MR. HELFMEYER: Bookends, Your Honor.

THE COURT: I'm just trying to figure out -- the attorneys on the other case are in the center. All right.

MR. FRANCO: Yes, sir.

THE COURT: All right. I'm going to ask you to answer these questions in sequence first and then second.

I understand you want to enter a plea of guilty in this matter before the Court; is that correct?

DEFENDANT WILSON: Yes, Your Honor.

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: And raise your right hand now, please, and be sworn.

(The oath was administered.)

THE COURT: Okay. We have the Wilson case over here and the Bower case over here.

All right. Do each of you understand you're now under oath and if you answer any of my questions falsely, those answers may later be used against you for prosecution for

REDACTED TRANSCRIPT

perjury, that's for making a false statement?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  Okay.  Please state your full name.

DEFENDANT WILSON:  Alfonso Alvarez Wilson, Your Honor.

THE COURT:  If you get closer to it and you speak up, you don't have to lean down each time.  It could be uncomfortable for you.

Age?

DEFENDANT WILSON:  65.

THE COURT:  55?

DEFENDANT WILSON:  65.

THE COURT:  65.

Education?  How high did you get in school?

DEFENDANT WILSON:  Master's degree in science.

THE COURT:  From where?

DEFENDANT WILSON:  Memphis State University.

THE COURT:  Okay.  Ma'am, name?

DEFENDANT BOWER:  Tomi-ko Bower.

THE COURT:  Age?

DEFENDANT BOWER:  71.

THE COURT:  Age -- I'm sorry.  Education?

DEFENDANT BOWER:  Masters of Nursing.

THE COURT:  Masters of Nursing.  What school?

DEFENDANT BOWER:  Chamberlain.

**REDACTED TRANSCRIPT**

THE COURT:  Have you ever been treated for any mental illness or addiction to narcotic drugs?

DEFENDANT WILSON:  No, Your Honor.

DEFENDANT BOWER:  No, Your Honor.

THE COURT:  Are you presently under the influence of any drug, medication, or alcoholic beverage of any kind?

DEFENDANT WILSON:  No, Your Honor.

DEFENDANT BOWER:  No, Your Honor.

THE COURT:  Have you had sufficient time to consult with your attorney?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes.

THE COURT:  Are you satisfied with your attorney?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes.

THE COURT:  I'm going to ask the defense counsels four questions at the same time.

Have you had sufficient time to investigate the law and the facts of your client's case now before the Court?

Does he or she understand the nature of the charges pending against him?

Has your client been able to cooperate with you in every respect?

And in your opinion is your client now mentally competent?

MR. FRANCO:  For Mr. Wilson, the answer is yes to all of them, Judge.

MS. SPARKS:  For Ms. Bower, the answer is yes, Your Honor.

THE COURT:  Okay.  Now, we have one defendant who is going on an information.  Who is that?

MR. FRANCO:  (Indicating Mr. Wilson.)

THE COURT:  Okay.  Let's see.  I know that you had kind of an abbreviated hearing down with Judge Bray, okay.  So you may go downstairs for a little follow-up after this.

MR. FRANCO:  Yes, sir.

THE COURT:  Okay.  I just need to know have you waived your right to be indicted by a grand jury?

MR. FRANCO:  Yes, we have, Your Honor.

THE COURT:  Have those rights been explained to your client?

MR. FRANCO:  They have, Judge.

THE COURT:  Okay.  And you explained them to him?

MR. GRAY:  Your Honor, I believe they've signed the waiver of indictment.

THE COURT:  Yes.  That, I understand, too.

MR. GRAY:  They have not fully been apprised of the right to an indictment at this time yet.

THE COURT:  They have not?

MR. GRAY:  They have not.  So they have not formally

waived --

THE COURT: Okay. You can mention down there that I have and I'll give you the --

All right. Do you understand you have a right to be indicted by a grand jury?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: Okay. A grand jury is composed, I think, generally of, what, about 23 people? I think it is. And that they hear only the government's side of the case; and if they determine there's a grounds for proceeding to an indictment, then they hand down an indictment and then you come down to the district court.

When you do it by information, information, of course, as you know, are just charges drawn up by the government that you agree to and you're waiving your right to a grand jury; so, in effect, without that buffer in between, it's the constitutional right to a grand jury and by doing so, you're going strictly on the charges filed by the government without any intervening force in between.

Do you understand that?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: And you understand you do have a right and have you discussed that with your attorney?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: All right. Counsel, have you discussed

this with your client?

MR. FRANCO:  Yes, we have, Your Honor.

THE COURT:  Do you think he fully understands his right to waive his right to a grand jury and to proceed by indictment?

DEFENDANT WILSON:  Yes, we do, Judge.

THE COURT:  All right.  Then I find that sufficient and everybody -- the officer of the Court stated that it has been signed but it has not reached me yet here and then we'll proceed that way.

Oh, wait.  Here it is.  The judge there didn't sign it so I'll do it.  They must be really doing some work down there.

MR. GRAY:  It was as packed as I've ever seen that courtroom.

THE COURT:  And it's a smaller courtroom.

By the way, I have the smallest full-time district courtroom in the building.  This is the junior judge's courtroom.  This is where every judge starts and they get the hell off this floor as quick as they can; but I decided to stay here even with that pole.  I had a pole in the state court, but I've got the best offices in the whole building.  So if I ever need the big ones, which I have, I can borrow them if I need to.

Okay.  Have you and your attorney received a copy

of the indictment pending against you? That's the written charges in this case.

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: Okay. I'll do yours first.

MS. CARSON: You mean the information, Your Honor?

THE COURT: That's right.

MR. FRANCO: Yes.

MS. CARSON: Thank you.

THE COURT: I'll say it again.

Did you read and do you understand the information and the charges pending against you in this case?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: Okay. You're pleading today to Count 1, a violation of the Foreign Corrupt Practices Act, a violation of 18, United States Code, Section 371.

The basic elements are the defendant and at least one other person agreed to commit the crime of -- and then what is the violation? On this sheet -- what is the violation? Just fill it in orally, please.

MS. CARSON: So it's a violation of the Foreign Corrupt Practices Act.

MR. GRAY: I believe it's 18 USC 78dd --

MS. CARSON: dd.

THE COURT: Okay. These are the -- I'm going to read it again. I've done many of these, but each one is a little

bit different on the Foreign Corrupt Practices Act.

That the defendant and at least one other person agreed to commit the crime, that is, a violation of the Foreign Corrupt Practices Act; that the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and that at least one of the co-conspirators during the existence of a conspiracy knowingly committed at least one of the overt acts described in the information in order to accomplish some object or purpose of the conspiracy.

Penalty is imprisonment in the federal penitentiary without parole for a term not to exceed five years and a fine of up to $250,000; supervised release not to exceed three years; and a $100 per count of conviction; oh, and forfeiture. The defendant agrees that he received $383,896 and stipulates to a money judgment in this amount.

MS. CARSON: And, Your Honor, we actually believe that the defendant has appeared today with a money order in that amount to hand over to the Marshals today.

THE COURT: Okay. You understand this to be the nature of the charge and the possible penalties pending against you?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: All right. To our other defendant, have you had an opportunity to read the indictment pending against you in this case?

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  You understand that you're pleading today to a violation of 21, United States Code, Section 846, conspiracy to unlawfully distribute controlled substances?  The elements are that two or more persons, directly or indirectly, reached an agreement to distribute controlled substances without authorization, that is, without a legitimate medical purpose or outside the usual course of professional practice; that the defendant knew of the unlawful purpose of the agreement; and that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

Penalty is imprisonment not to exceed 20 years in the federal penitentiary without parole and a fine of up to $1 million, supervised release following any period of imprisonment of at least three years, and $100 count of conviction as a special assessment.

Do you understand this to be the possible -- that this is the nature of the charges and the possible penalties pending against you?

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  Do each of you understand that you have a right to continue to plead not guilty if you want to?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

**REDACTED TRANSCRIPT**

THE COURT: All right. If you elected to continue to plead guilty, you would have had a right to a trial by jury or before the Court during which you'd also have the right to the assistance of counsel for your defense, the right to see and hear all the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense at trial and at trial the government would have to prove each element of which you were charged beyond a reasonable doubt.

Do you also understand that by pleading guilty, if that plea is accepted today, there will be no trial and you will have waived or given up your right to a trial as well as those other rights that I just described?

Do you also understand that if I accept your plea of guilty today, you will be waiving any non-jurisdictional defects, if any, in this prosecution such as, for example, any illegal search and seizure; a violation of your right to a speedy trial; and an inadmissible statement if you've made one. In other words, if I accept your plea of guilty, you will not be able to raise these defenses at a later time.

Do you understand that?

DEFENDANT WILSON: Yes, Your Honor.

DEFENDANT BOWER: Yes, Your Honor.

REDACTED TRANSCRIPT

THE COURT: All right. Let's see. I'm going to ask the defendants one at a time.

Are you a citizen of the United States?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: Are you a citizen of the United States?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: As so, you need to understand that what you're pleading to today is a felony and if your plea is accepted, you will be adjudged of that offense and such conviction will deprive you of such rights as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm.

Do you also understand the Court has the authority to order restitution if it's applicable? Do you understand these possible consequences of your plea?

DEFENDANT WILSON: Yes, Your Honor.

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: All right. Guidelines have been set -- wait a second.

Okay. I'm going back.

Has any plea agreement been entered between the parties in this case?

MS. CARSON: Yes, Your Honor.

MS. SPARKS: Yes, Your Honor.

MR. HELFMEYER: Yes, Your Honor.

REDACTED TRANSCRIPT

THE COURT:  There you are.  Okay.

Initially what's the consequence of this as a waiver of right to appeal?

MR. HELFMEYER:  With respect to Ms. Bower, Your Honor, the defendant is waiving all of her appellate rights with the exception of her constitutional right to effective assistance of counsel.

THE COURT:  Counsel, on your case?

MS. CARSON:  The same for Mr. Wilson, Your Honor.  He is waiving all rights except for his defense of ineffective assistance of counsel.

THE COURT:  Under which sections are we proceeding, under sections, that is, of the Federal Rules of Criminal Procedure?

MR. HELFMEYER:  With respect to Ms. Bower, 11(c)(1)(A) and 11(c)(1)(B).

THE COURT:  A and B.

Yours, counsel?

MS. CARSON:  For Mr. Wilson also 11(c)(1)(A) and 11(c)(1)(B).

THE COURT:  Okay.

All right.  Guidelines have been set for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the guidelines might apply to your case?

**REDACTED TRANSCRIPT**

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  All right.  Do you understand I'll not be able to determine the guideline sentence for your case until after a presentence report has been completed and you and the government have had an opportunity to challenge the facts reported by the probation officer and do you understand that after it's been determined what guideline applies to a case, the judge has the authority to impose a sentence that's more severe or less severe than the sentence called for by the guidelines?  Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that a court imposes except to the extent that you've waived those rights in the plea agreement?  And I understand that both of you have waived all of the rights except for that one that was mentioned by your prosecutor.

Do you understand that, sir?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  And do you understand here in the federal system that it is different than the Texas state system?  Here in the federal system, parole has been abolished; and if you're sentenced to the penitentiary, you will not be released on parole.

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  Now, if you would, please state for the record just a quick outline of the rest of the terms of the plea agreement.

Counsel, you first.

MR. HELFMEYER:  Yes.  With respect to Ms. Bower in exchange for her plea of guilty to Count 1, the government has agreed to move to dismiss the remaining counts at the time of sentencing.

THE COURT:  How many other counts are there?

MR. HELFMEYER:  Other counts, there are five additional counts.

THE COURT:  Against this defendant?

MR. HELFMEYER:  Against this defendant.  Three of those counts carry 20-year statutory maximums.  The other two carry 10-year statutory maximums.

THE COURT:  So it would be 20, 40, 60, 80 years if they're all stacked together, if they were?

MR. HELFMEYER:  Yes.

THE COURT:  All right.  She's pleading to one 20-year count?

MR. HELFMEYER:  Yes, Your Honor.

THE COURT:  All right.  Go on.

MR. HELFMEYER:  In exchange for her plea of guilty, the government agrees to recommend to the Court and to probation

that she receive three points for acceptance, if she's eligible for acceptance of responsibility in pleading guilty. The parties agree to recommend that the relevant conduct under 2D1.1 is that she was involved in the distribution of approximately 1,970 kilograms of converted drug weight.

THE COURT: How much? 1,000?

MR. HELFMEYER: 1,970, Your Honor.

THE COURT: Hang on a second. That's over, what, a ton?

MR. HELFMEYER: Two tons, I believe.

THE COURT: It's 2.2 per kilo.

MR. HELFMEYER: 2.2.

THE COURT: All right. Go on. I know we're not dealing in it's an equivalency, but go on.

MR. HELFMEYER: That's correct.

The parties agree to recommend that Section 3B1.1 Subsection B applies because the defendant was a manager or supervisor, resulting in a 3-point enhancement under the guidelines and that she receives a 2-point aggravated adjustment for abusing a position of trust as a nurse.

THE COURT: Okay. Are those the terms of the plea agreement with the government as you understand them?

DEFENDANT BOWER: Yes.

THE COURT: Has anyone made any other or different promise to you of any kind such as possible leniency or an

offer of probation in order to get you to plead guilty in this case?

DEFENDANT BOWER: No, Your Honor.

THE COURT: Has anyone attempted in any way to threaten, force or coerce you into pleading guilty?

DEFENDANT BOWER: No, Your Honor.

THE COURT: Okay. How about the next one, please?

MS. CARSON: For Defendant Alfonso Wilson, the United States agrees not to file other counts arising from the conduct described in the information beyond the one singular count to which Mr. Wilson is pleading now. The government further agrees to recommend to the Court and probation that for the purposes of Section 2B1 --

THE COURT: Slow down, please.

MS. CARSON: Sorry.

For the purposes of Section 2B1.1 of the sentencing guidelines, the Court should consider the amount of the corrupt payments that were actually paid, which is more than 1.5 million, but less than $3.5 million.

The United States further agrees to recommend to the Court and probation that the defendant does not qualify for an aggravating role enhancement under Section 3B1.1 and that the defendant is an average participant in the scheme.

Finally the United States agrees not to oppose the defendant's request for acceptance of responsibility and to

request an additional one-level decrease for early acceptance.

THE COURT:  Do you need to sit down for a moment?

MS. CARSON:  Yes.

THE COURT:  Yes, please.

All right.  Anything further, counsel?

MR. PARDESI:  Nothing further from the government, Your Honor.

THE COURT:  Okay.  Are those the terms of the plea agreement with the government as you understand them?

DEFENDANT WILSON:  Yes, Your Honor.

THE COURT:  Has anyone made any other or different promise to you of any kind such as possible leniency or an offer of probation in order to get you to plead guilty in this case?

DEFENDANT WILSON:  No, Your Honor.

THE COURT:  Has anyone attempted in any way to threaten, force or coerce you into pleading guilty?

DEFENDANT WILSON:  No, Your Honor.

THE COURT:  Okay.  I'm considering your plea of guilty. Both defendants, under Federal Rules of Criminal Procedure 11(c)(1)(A) and (B), do you understand I may accept or reject the plea agreement as proposed?

DEFENDANT WILSON:  Yes, Your Honor.

DEFENDANT BOWER:  Yes, Your Honor.

THE COURT:  Do you also understand that if I accept

**REDACTED TRANSCRIPT**

your plea agreement -- if I accept the plea of guilty but reject the plea agreement that you brought before the Court, you still will not be able to withdraw your plea of guilty at a later date?

And also do you understand that the government's recommendation or your request for a particular sentence is not binding on the Court and I'm free to assess any punishment within the limits prescribed by law as I described to you earlier?

DEFENDANT WILSON: Yes, Your Honor.

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: Are you now ready to plead to the one count to which you're pleading, sir?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: And are you ready to plead to the one count to which you are, ma'am?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: Okay. Now to the attorneys. Defense lawyers, do you know any reason why your defendant should not plead guilty?

MR. FRANCO: No reasons, Your Honor, for Mr. Wilson.

MS. SPARKS: No reasons, Your Honor, in regards to Ms. Bower.

THE COURT: Is there any meritorious defense your client would have as to the count -- the one count to which he

or she intends to plead?

DEFENDANT WILSON:  Could you repeat that?

THE COURT:  No.  That's to the lawyer.

DEFENDANT WILSON:  Okay.

THE COURT:  Do you know of any meritorious defense that your defendant, your client, would have to the counts to which he intends to plea?

MR. FRANCO:  No, Your Honor.

MS. SPARKS:  No, Your Honor.

THE COURT:  All right.  Before I can accept your plea of guilty, I need to make a determination there's a factual basis for your plea of guilty and that you are, in fact, guilty as charged.  I want you to listen to the assistant U.S. attorney as the assistant U.S. attorney will give me a brief summary of what the evidence would have showed if this case had gone to trial.

You're first.  You're up.

MR. HELFMEYER:  With respect to Ms. Bower, yes, Your Honor.

THE COURT:  Yes.  Go right ahead.

MR. HELFMEYER:  The defendant, Tomi-ko Bower, knowingly and willfully conspired with Dr. Maryam Qayum, Lester Stokes, Melvin Sampson, and others to unlawfully distribute controlled substances, hydrocodone and oxycodone, in violation of Title 21.

**REDACTED TRANSCRIPT**

From approximately 2022 through May of 2025, the defendant was employed as a nurse practitioner at Recare Health Clinic in Kingwood.

THE COURT: So she's got a license?

MR. HELFMEYER: A nurse practitioner's license.

THE COURT: It's a nurse practitioner's license.

MR. HELFMEYER: Yes, Your Honor.

THE COURT: Nurse practitioner.

MR. HELFMEYER: In that role, she regularly interacted with Recare's customers. Dr. Qayum owned Recare and was its prescribing physician. Lester Stokes was a security guard, and prescriptions were issued from Recare using Dr. Qayum's DEA registration. Many of Recare's customers were street-level drug traffickers known at Recare as, quote, unquote, providers. They would purchase controlled substance prescriptions for cash. The defendant knew and understood that issuing controlled substance prescriptions to patients brought to Recare by these providers was unauthorized, without a legitimate medical purpose, and outside the usual course of professional practice.

Often Dr. Qayum did not conduct patient encounters at Recare. Instead, the defendant, another nurse practitioner, or a medical assistant would conduct the patient encounter.

Among defendant's other responsibilities was

maintaining appointment lists on which defendant kept track of patients, prescriptions and cash. Occasionally defendant or another Recare employee would include with the patient's Appointment List entry the name of the patient's provider. Defendant and Dr. Qayum knew that prescribing controlled substances to patients identified in this way was unauthorized.

Melvin Sampson was among the providers who brought patients to Recare. Sampson's patients included the following patients with the following initials: EB, RC, AM, BP, DW and MW, each of whom received oxycodone prescriptions in Dr. Qayum's name that the defendant knew were unauthorized.

Other patients for whom Dr. Qayum issued unauthorized prescriptions for oxycodone and hydrocodone included HR, PS, CJ, TM and DZ.

On March 27, 2025, DEA executed a search warrant at Recare. For a time after the search warrant, Recare's operations changed; however, on May 14th of 2025, Lester Stokes called co-conspirator and provider Melvin Sampson to tell Sampson that Recare was back taking new patients. New patients subsequently received oxycodone and hydrocodone prescriptions from Dr. Qayum. Defendant knew that such controlled substance prescribing was unauthorized. In this manner, the defendant knowingly, intentionally and unlawfully distributed the equivalent of approximately 1,970 kilograms of converted drug weight of hydrocodone and oxycodone, knowing and intending that

such distribution was unauthorized.

THE COURT: Okay. Are these facts recited by the assistant U.S. attorney true?

DEFENDANT BOWER: Yes, sir.

THE COURT: Your answer?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: All right. Did you intend to commit the acts as he just described; that is, did you know what you were doing at the time?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: You now may arraign the defendant as to the count involved in the plea agreement unless, counsel, you want to waive reading of the information.

MR. HELFMEYER: "Indictment," Your Honor.

THE COURT: No. She's got to waive it.

MR. HELFMEYER: Yes, but "indictment," not "information." The Court said, "information."

THE COURT: Hold it. Hold it. Okay. Thank you.

MR. HELFMEYER: You're welcome.

THE COURT: I almost made it. Okay.

MS. SPARKS: Yes, we will waive the reading.

THE COURT: Wait a second. I'm going to do it again.

Are the facts recited by the assistant U.S. attorney true, ma'am?

DEFENDANT BOWER: Yes, Your Honor.

REDACTED TRANSCRIPT

THE COURT: Did you intend to commit the acts that were just described?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: You may now arraign the defendant as to the counts involved in the plea agreement unless you want to voluntarily waive reading of the indictment.

MS. SPARKS: We'll waive reading of the indictment.

THE COURT: As to the one count to which you're pleading, how do you plead? Guilty or not guilty?

DEFENDANT BOWER: Guilty.

THE COURT: All right. Have you read and do you understand the plea of guilty agreement?

DEFENDANT BOWER: Yes, Your Honor.

THE COURT: If it's your desire, you may go ahead and sign it at this time.

MR. HELFMEYER: We've provided it to Mr. Wells, Your Honor.

THE COURT: Okay. Just let me look at it and then we're going to give you some wrap-ups, okay? Give me a second.

Okay. I'll make my findings as to both in a moment, okay?

Now as to our other case -- okay. We've already done that.

MR. PARDESI: Would Your Honor like me to go ahead --

THE COURT: Okay. We need a background of the case.

**REDACTED TRANSCRIPT**

MR. PARDESI:  Yes, Your Honor.

THE COURT:  Okay.  Give me a background of what the facts would have shown had this case gone to a jury trial.

MR. PARDESI:  Yes, Your Honor.

At all relevant times Defendant Alfonso Wilson was a citizen of the United States and a resident of the Southern District of Texas.  Defendant owned and controlled Intermediary Company-2, a company based in the Southern District of Texas.  Beginning in or around 2019, Equipment Company, a company based in the Southern District of Texas, began discussing the potential sale of certain drilling equipment to Petroleos Mexicanos, PEMEX, Mexico's state-owned and state-controlled oil company, and to PEMEX's divisions, subsidiaries or affiliates, including PEMEX Exploración y Producción, PEP.  In connection with the potential equipment sales, Equipment Company hired and paid Intermediary Company-1, a company based in Mexico, to serve as its agent in connection with sales Equipment Company made to PEMEX.  In turn, Intermediary Company-1 hired and paid defendant through Intermediary Company-2 and provided commissions in connection with certain sales Equipment Company made to PEMEX.  Defendant reported directly to an executive at Equipment Company and acted as an agent of Equipment Company.

Foreign Official was a senior executive official at PEP from at least in or around December 2018 until at least

in or around February 2021. In or around early 2020, defendant and others presented a proposal to Foreign Official and others at PEMEX for the sale of certain drilling equipment from Equipment Company to PEMEX. Defendant's responsibilities, among other things, included liaising with Foreign Official at the direction and as an agent of Equipment Company in connection with obtaining a contract for Equipment Company to sell drilling equipment to PEMEX.

Beginning in or around early 2020, defendant and his co-conspirators agreed and offered to pay millions of dollars in bribes to Foreign Official in order to obtain or retain business for Equipment Company with PEMEX, namely a contract to sell approximately 540 million U.S. dollars of drilling equipment to PEMEX, otherwise referred to as "the December 2021 contract." In furtherance of that effort of the conspiracy, defendant offered a substantial bribe payment to Foreign Official. Defendant and his co-conspirators agreed to offer and pay bribes to Foreign Official with the expectation that in exchange for the bribes, one, Foreign Official would help ensure that PEMEX would award business to Equipment Company and, two, once PEMEX awarded the December 2021 contract to Equipment Company, Foreign Official would exercise influence over others within PEMEX to secure payments from PEMEX to Equipment Company under the December 2021 contract.

In or around December 2021, PEMEX awarded the

**REDACTED TRANSCRIPT**

December 2021 contract to Equipment Company. Defendant and his co-conspirators agreed that Equipment Company would make the bribe payments to Foreign Official by transferring money to Intermediary Company-1 that Intermediary Company-1 would use in part to pay the bribes to Foreign Official.

Defendant communicated with his co-conspirators regarding the bribe scheme, including with Equipment Company employees and others engaged by Equipment Company in connection with the December 2021 contract, through WhatsApp, an electronic messaging application used on mobile devices.

In or around July 2023 through in or around November of 2023, defendant received approximately $415,800 for his efforts in support of the bribery scheme. Specifically defendant's Intermediary Company-2 received those payments from Intermediary Company-1, which in turn received commissions from Equipment Company pursuant to their agreements resulting from the December 2021 contract.

THE COURT: Now, you can summarize as much as you need to, okay?

MR. PARDESI: I am three sentences away way from being done, Your Honor.

THE COURT: Go right ahead.

MR. PARDESI: Defendant engaged in several transactions with the elicit proceeds he collected. Defendant's conduct, as recounted above, was in all respects knowing and deliberate and

was not committed by mistake, accident or other innocent reason. Defendant knew that his contract was unlawful.

THE COURT: All right. Are these facts recited by the assistant U.S. attorney true?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: Did you intend to commit the acts as he just described, that is, did you know what you were doing at the time?

DEFENDANT WILSON: Yes, Your Honor.

THE COURT: All right. You may now arraign the defendant as to the counts involved in your agreement unless you want to waive reading of the information.

MR. FRANCO: Your Honor, we will waive the reading, Judge.

THE COURT: All right. As to the one count to which you've pled, how do you plead? Guilty or not guilty?

DEFENDANT WILSON: Guilty.

THE COURT: Have you read and do you understand the plea of guilty agreement?

DEFENDANT WILSON: Yes.

THE COURT: You may go ahead and sign it if that's your desire at this time. I understand it's already been signed.

MR. PARDESI: It has, Your Honor.

THE COURT: All right. Now to both defendants -- both defendants -- these are the Court's findings: I find each

defendant is mentally competent at the present time, I find there's a factual basis for the plea of guilty, and that each defendant intended to do the acts he or she committed. I find that the plea of guilty is voluntarily and knowingly made, that each defendant understands the nature of these proceedings and understands the consequences of his or her plea of guilty.

Upon your individual pleas of guilty, I find each of you guilty as to the one count that each of you pled to, and I will consider the parties' plea agreements before the imposition of sentence.

A written presentence report will be prepared by the probation office to assist me in sentencing. You will be required to give information for that report, and your attorney may be present if you wish. The Court will then permit you and your counsel to read the presentence report before the sentencing hearing; and at the sentencing hearing, you and your counsel will be given the opportunity to speak on your behalf. They'll contact you in your place of confinement.

Now, before I decide whether you're going right to the jailhouse or you can remain on bond, I need to discuss it. So one of the Foreign Corrupt Practices Act folks, hold for a second, because it's a little more complicated with what we have to do downstairs. It's not going to take long, but let me go to the other one. You can have a seat or you can remain standing if you want, whatever you desire. It's not going to

**REDACTED TRANSCRIPT**

take more than five minutes; but if you want to, just stand and listen or just --

MR. FRANCO:  We'll sit, Judge.

THE COURT:  -- have a seat.

MR. FRANCO:  Thank you, Judge.

THE COURT:  All right.  What's the bond situation on this defendant?

MR. HELFMEYER:  Your Honor, if I can move over to the other microphone, if you give me one second.

THE COURT:  Yes.  Please.

MR. HELFMEYER:  She is on bond.  She's on a $50,000 bond as agreed to by the government and Ms. Bower's counsel at initial appearance.

THE COURT:  No, I'm asking you.  What is the -- you know what's coming.

MR. HELFMEYER:  Yes, Your Honor.  And she's on --

THE COURT:  What sort of a bond?  Any security on the bond?

MR. HELFMEYER:  Not on the $50,000 bond, Your Honor.

THE COURT:  So what if she runs?

MR. HELFMEYER:  Then there would be --

THE COURT:  Then you can't collect anything.

MR. HELFMEYER:  Unless we found her.  That's correct, Your Honor.

THE COURT:  And she's facing 20 years in the

penitentiary?

MR. HELFMEYER: Yes, Your Honor. The government in our investigation and our assessment of the case did not find that Ms. Bower was a flight risk. She has extensive ties to the Southern District of Texas.

THE COURT: First of all, what about her licenses? Have they been revoked or handed in?

MR. HELFMEYER: She's retired, Your Honor. She's no longer practicing. However, to the Court's question, they have not been revoked by the Board of Nursing.

THE COURT: Why not? Have you notified them as to what's going on?

MR. HELFMEYER: Yes, Your Honor. The Board of Nursing is aware of what's going on with the indictment, not with the plea of guilty, because it's just been entered.

THE COURT: Can she still write prescriptions or anything like that?

MR. HELFMEYER: No, Your Honor, she cannot.

THE COURT: Of course I think with the PAs and the nurse practitioners, they have the authority to do some prescriptions if they're under the supervision of a doctor, correct?

MR. HELFMEYER: That's correct. Under Texas state law, they can prescribe Schedule III, IV and V drugs or Schedule IIs under special circumstances. None of those are a concern with

REDACTED TRANSCRIPT

respect to Ms. Bower in the government's mind.

THE COURT: What is she doing now?

MR. HELFMEYER: My understanding is she's retired, Your Honor. As an additional condition of bond, she was required to seek and obtain employment; however, given her age, she requested of the Court permission to not do that and to retire. The Court granted her permission and to --

THE COURT: Which Court?

MR. HELFMEYER: And I don't remember if it was Your Honor or Judge Bray, but there was --

THE COURT: It wasn't me.

MR. HELFMEYER: A motion was filed allowing her to not work.

THE COURT: All right.

MR. HELFMEYER: And so she's not working, Your Honor. She's living in the same house where she lived before.

THE COURT: Is she married?

MR. HELFMEYER: Yes, Your Honor.

THE COURT: Okay.

MR. HELFMEYER: She has --

THE COURT: Is the family here or where?

MR. HELFMEYER: Here in the Southern District of Texas. I believe some of them are in court today, but, yes, here, Your Honor.

THE COURT: So what's your recommendation?

**REDACTED TRANSCRIPT**

MR. HELFMEYER: My recommendation would be to allow her to remain on bond pending sentencing, to surrender at the time of sentencing.

THE COURT: How old is she now?

MR. HELFMEYER: I believe she told the Court 71 years old, which is consistent with my understanding as well.

THE COURT: All right. Does the defense want to add anything?

MS. SPARKS: Yes. Just to answer a few of your questions, Your Honor, she's been at -- she's 71 --

THE COURT: Microphone, please.

MS. SPARKS: To answer a few of your questions, Your Honor, she's 71. She gets Social Security in the amount of $2400; and so that's why we ask the Court to not require her to work, because if she worked, she wouldn't get the $2400 she gets in Social Security.

She's been married for over 42 years. Her husband is 72 years old. He's had a stroke and is blind in one eye and doesn't walk, so she's his primary caretaker. They've been married for 40 years, and the home that they've been in, they've had for over 40 years. That home is paid for. If the Court needs additional consideration, her home is the one thing that she owns free and outright.

We've been cooperative with the AUSA and she's brought her grandson here today and her daughter-in-law drove

her here.  She doesn't even really drive.  The cars that she owns are 2010s, so her home and her two cars are all her husband has.

THE COURT:  When was all of this problem going on?  Up until what year did you finally catch this lady?

MR. HELFMEYER:  In May of last year, Your Honor, May of 2025.

THE COURT:  Was she driving at that time?  You said she's not even driving.

MS. SPARKS:  Not at this point, Your Honor.  And to put in a --

THE COURT:  Why?  Why isn't she driving?

MS. SPARKS:  She doesn't drive because of her stress and anxiety levels.  Since this case, she has been put on prescription medication; and most of the time when she comes to my office, we Uber her.  She lives out in the country in -- what is the city?

DEFENDANT BOWER:  Cleveland.

MS. SPARKS:  In Cleveland, Texas, Your Honor.  So for the most part, she just stays in Cleveland, Texas.

THE COURT:  All those clinics are up north of town, weren't they?

MR. HELFMEYER:  The clinic in this case was in Kingwood.

THE COURT:  Kingwood?

MR. HELFMEYER:  Yes, Your Honor.  It's shut down.  It's closed.  The owner of the clinic pled guilty last week.

THE COURT:  All right.  I'll allow had her to remain free on the same bond, but you let her know if she runs at all -- it took me one time seven years, and I got somebody back.  So it's a rarity.  But you just let her know that 20 years is a starting point or an ending point.

All right.  Anything further from the government?

MR. HELFMEYER:  No, Your Honor.  Thank you.

THE COURT:  Anything further from the defense?

MS. SPARKS:  Nothing further, Your Honor.

THE COURT:  All right.  Then she's released on the same conditions she's on presently.

MS. SPARKS:  Thank you, Your Honor.

MR. HELFMEYER:  Actually, Your Honor, we need dates for the presentence report and the sentencing.

THE COURT:  Oh, yeah.

MR. HELFMEYER:  I apologize.

THE COURT:  No.

MR. HELFMEYER:  Well, you asked if I needed anything else; and I said, "No."

THE COURT:  All right.  The defendant is ordered to be back before this Court for sentencing on June 16th -- no, I'm sorry -- June 26, 2026, at 1:30 P.M.

Now, anything further from the government?

MR. HELFMEYER: No. Thank you.

THE COURT: Anything further from the defense?

MS. SPARKS: Nothing further, Your Honor.

THE COURT: Thank you. We'll stand adjourned in this matter.

May we have all the folks back up here on our Mr. Wilson's case?

Okay. What's the situation? What's the situation, the bond situation or anything else? I know it's nothing downstairs, but I've been in contact with the judge's office downstairs and I'm going to have some input on it. But he's going to take care of it, okay?

So now give me your position. What's your suggestion about what sort of a bond? Secured? Unsecured? What's the deal before I decide does he go straight into the jailhouse or allow him on bond pending sentencing?

MR. GRAY: Your Honor, we are fully supportive of a bond here.

THE COURT: Why?

MR. GRAY: Mr. Wilson has known about this investigation since ▇▇▇▇▇▇▇ I believe is the date. The ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

THE COURT: What's he doing now?

REDACTED TRANSCRIPT

MR. GRAY:  Your Honor --

THE COURT:  Don't ask him.  I do this all the time.  If the government is going to make recommendations, they need to know why he's not a danger or whatever.

MR. GRAY:  My understanding is he's retired.  He has young -- he has college-age children.  My understanding is he's retired.  He had this consulting business that was one of the companies that was listed in the information.  But my understanding from the pretrial report is that he's not currently working, but he is -- I believe he's 65 years old.  He's at retirement age.

THE COURT:  Where does he reside?

MR. GRAY:  In Sugar Land, Your Honor.

THE COURT:  In Sugar Land?

MR. GRAY:  Yes, Your Honor.  So he has a family there in Sugar Land, a U.S. citizen wife, U.S. citizen children as well;

**REDACTED TRANSCRIPT**

████████████████████████████████████

███████████████████████████████

THE COURT:  How much of a bond can he afford?  Secured?
Unsecured?  What's your suggestion?

MR. GRAY:  So our suggestion at the outset was an
unsecured bond, Your Honor; and I think we are fully fine with
that.  We don't have concerns with him being a flight risk.

THE COURT:  All right.

MR. GRAY:  So I believe that pretrial recommended
either 25,000 or 50,000, but unsecured is fine with us given --

THE COURT:  I'm not saying one or the other.  All
right.

As far as the counsel goes, what's your position,
please?

MR. FRANCO:  Yes, Your Honor.  With respect to
Mr. Wilson, we're respectfully asking the Court to allow him to
stay on bond.

Our position is --

THE COURT:  Is he on bond now?  Has a bond been set
downstairs?

MR. FRANCO:  It had not, Judge.

THE COURT:  That's what I mean.  It's going to be set
when you go back down there.

MR. FRANCO:  Yes, correct.

THE COURT:  So what's your position?

MR. FRANCO:  Well, our position is that he be allowed to remain on bond, Judge, respectfully.

THE COURT:  Well, do you mean be on bond?

MR. FRANCO:  Be on bond.  I reworded it incorrectly again, Judge.

But as Mr. Gray --

THE COURT:  You can stand up.  You're carrying fine.

MR. FRANCO:  As the prosecutor mentioned, Mr. Wilson resides in Sugar Land, Judge.  He's had the same house for over 20 years, he's had the same wife for over 20 years.  They reside in a neighborhood where he's very active with the community.  He has three children, one of which was still a college student and resides with him at the house as well.  And so he has no criminal history whatsoever --

THE COURT:  Where do the other two reside?

MR. FRANCO:  The other two -- one resides in California, Judge.  He's getting his master's degree or actually his PhD degree.

The other is in the Seattle area.  He is a nuclear physicist, Judge.

So those two boys, they are currently in college.  His youngest daughter, who is 21 --

DEFENDANT WILSON:  22.

MR. FRANCO:  22 -- is a student in San Marcos but she still comes over and resides with mother and father.

THE COURT: All right. You can just inform him -- I'm telling my case manager also -- that I have no specific concerns relative to bond. It's basically I'll leave it to the magistrate judge, but they are awfully busy this morning. I had to call down and say, "Well, how do I do it?"

But in any event, I think I followed all the instructions. But you can say that I have no particular concern --

MR. FRANCO: Thank you.

THE COURT: -- about him going on a bond and whatever. Judge Bray is an independent judicial officer, but I had no concerns -- which he knows that maybe is not a usual comment from me -- at least in the short run.

But your client also understands that anybody run on me, we have a lifetime appointment and it was a pleasure to visit with one that was out for seven years and the Marshals and the FBI finally found him and tracked him down. That was an interesting reunion that we had.

All right. Anything further from the government?

MR. GRAY: The only other thing, Your Honor, is that we would ask that the plea agreement be maintained under seal.

THE COURT: All right. I'll do that. And we now have a date. Sentencing is set for June 26, 2026. That's June 6, 2026, at 1:45 P.M.

All right. Anything further from the government?

MR. GRAY:  Nothing further, Your Honor.

THE COURT:  Anything further from the defense?

MR. FRANCO:  No, Your Honor.

THE COURT:  By the way, keep in mind, counsel -- I'm sure you know it -- that if they are going to be free pending sentencing, I believe you need to check with probation also before you leave the building.

MR. FRANCO:  We will, Judge.

THE COURT:  Okay.  All right.

Off the record.

(Off-the-record discussion.)

THE LAW CLERK:  All rise.

(The proceedings were adjourned.)

*  *  *  *

REPORTER'S CERTIFICATE

I, Lanie M. Smith, CSR, RMR, CRR, Official Court Reporter, United States District Court, Southern District of Texas, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

_____/s/ Lanie M. Smith_____
Official Court Reporter

**REDACTED TRANSCRIPT**